LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ASHLEY VILELLA, *on behalf of herself,* *FLSA Collective Plaintiffs and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>PUP CULTURE LLC<br>    d/b/a PUPCULTURE,<br>PUPCULTURE DUMBO LLC<br>    d/b/a/ PUPCULTURE DUMBO,<br>PUPCULTURE FIDI LLC<br>    d/b/a/ PUPCULTURE FIDI,<br>PUPCULTURE TRIBECA LLC<br>    d/b/a/ PUPCULTURE TRIBECA,<br>PUPCULTURE UWS LLC<br>    d/b/a/ PUPCULTURE WEST 57,<br>JOHN DOE CORPORATION<br>    d/b/a PUPCULTURE SOHO,<br>and IBRAHIM ALIMIMEH,<br><br>Defendants. | Case No.:<br><br><br>**CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT**<br><br><br>Jury Trial Demanded |

Plaintiff, ASHLEY VILELLA ("Plaintiff"), on behalf of herself and others similarly

situated, by and through her undersigned attorneys, hereby files this class and collective action

Complaint against Defendants, PUP CULTURE, LLC d/b/a PUP CULTURE, PUPCULTURE

DUMBO LLC d/b/a/ PUPCULTURE DUMBO, PUPCULTURE FIDI LLC d/b/a/ PUPCULTURE

FIDI, PUPCULTURE TRIBECA LLC d/b/a/ PUPCULTURE TRIBECA,  PUPCULTURE UWS

LLC d/b/a/ PUPCULTURE WEST 57, and JOHN DOE CORPORATION d/b/a/ PUPCULTURE

1

SOHO ("Corporate Defendants"), and IBRAHIM ALIMIMEH ("Individual Defendant," and together with the Corporate Defendants, the "Defendants") and states as follows:

## INTRODUCTION

1.    Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime due to an improper straight time rate; (2) liquidated damages; and (3) attorney's fees and costs.

2.    Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premiums due to an improper straight time rate; (2) unpaid spread of hours premiums; (3) compensation for late payment of wages (4) statutory penalties; (5) liquidated damages; and (6) attorney's fees and costs.

3.    Plaintiff alleges on behalf of herself, and others similarly situated that Defendants willfully filed fraudulent information returns regarding Plaintiff and Class members with the Internal Revenue Service ("IRS"), in violation of 26 U.S.C. § 7434.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

6.    The IRS will be notified of this Complaint as the Internal Revenue Code requires. Specifically, the Internal Revenue Code provides that "[a]ny person bringing an action under [26

U.S.C. § 7434] Subsection (a) shall provide a copy of the complaint to the IRS upon the filing of such complaint with the court." 26 U.S.C. § 7434(d).

## PARTIES

7.     Plaintiff VILELLA was a resident of New York State.

8.     Defendant, PUPCULTURE LLC d/b/a PUP CULTURE is a domestic business corporation organized under the laws of New York, with an address for service of process at 521 Broome Street, New York, New York 10013. Upon information and belief, Defendant PUPCULTURE LLC, is the parent company for all of the Corporate Defendants that own and operate day care services for dogs under the common brand Pupculture. Such services are provided in the facilities located at the following addresses:

   a.   645 West 57th Street, New York, NY 10019 ("Pupculture West 57")

   b.   149 Plymouth Street, Brooklyn, NY 11201 ("Pupculture Dumbo")

   c.   521 Broome Street, New York, NY 10013 ("Pupculture Soho")

   d.   170 Hudson Street, New York, NY 10013 ("Pupculture Tribeca")

   e.   21 Murray Street, New York, NY 10007 ("Pupculture FIDI")

   (Collectively, the "Facilities").

   *See* **Exhibit A.**

9.     At all relevant times, Corporate Defendants own and operate the Facilities as a single integrated enterprise under the trade name "Pupculture" in the State of New York. All of the Corporate Defendants are interrelated to one another and are owned by Corporate Defendant PUPCULTURE LLC:

   a.   Each of the Facilities is advertised and marketed jointly on Defendants' website located at http://www.pupculture.com/. *See* **Exhibit B.**

b.  All of the Facilities are owned and operated by Defendants under the same brand name and logo. *See id.*

c.  All of the Facilities use a central marketing department, HR Department, and administration department. This may be seen from Defendants single career page, where Defendants' centralized administrative departments receive applications and assign new hires to the Facilities. *See* **Exhibit C**.

d.  All of the Facilities provide the same types of services such as dog walking, dog grooming, dog daycare, and boarding. *See* **Exhibit D**.

e.  All the Facilities share the same Facebook and Instagram, using the same brand name and logo of Pupculture. *See* **Exhibit E.**

f.  Defendants' website accepts registrations for services, such as dog walking, dog grooming, dog daycare, and boarding for all of the Facilities. *See* **Exhibit F.**

g.  Most Facilities share common operating hours, which are from 7:00 a.m. to 8:00 p.m. during the weekdays, and 7:00 a.m. to 7:00 p.m. during the weekends, with the exclusion of the Pupculture West 57 Facility which have the operating hours from 7:00 a.m. to 7:00 p.m. during the week and 7:00 a.m. to 7:00 p.m. during the weekend. *See* **Exhibit G.**

h.  All employees are interchangeable between Defendants' Facilities.  In fact, Plaintiff herself was assigned to work at multiple facilities during her employment.

i.  Individual Defendant IBRAHIM ALIMIMEH is the owner of all Corporate Defendants and Facilities.

10.  Defendant, PUPCULTURE DUMBO LLC d/b/a/ PUPCULTURE DUMBO is a domestic limited liability company organized under the laws of New York. The address for service

4

of process for PUPCULTURE DUMBO LLC is 1060 Broadway, 3001, Albany, New York 12204. The named recipient for service of process for Defendant PUPCULTURE DUMBO LLC is Ibrahim Alimimeh. PUPCULTURE DUMBO LLC owns, controls, and operates the Pupculture Dumbo Facility.

11.    Defendant, PUPCULTURE FIDI LLC d/b/a/ PUPCULTURE FIDI is a domestic limited liability company organized under the laws of New York. The address for service of process for PUPCULTURE FIDI LLC is 521 Broome Street, New York, NY 10013. The named recipient for service of process for Defendant PUPCULTURE FIDI LLC is Ibrahim Alimimeh. PUPCULTURE FIDI LLC owns, controls, and operates the Pupculture FIDI Facility.

12.    Defendant, PUPCULTURE TRIBECA LLC d/b/a/ PUPCULTURE TRIBECA is a domestic limited liability company organized under the laws of New York, with the address for the service of process at 60 Horatio St., New York, NY 10014. PUPCULTURE TRIBECA LLC owns, controls, and operates the Pupculture Tribeca facility.

13.    Defendant, PUPCULTURE UWS LLC d/b/a/ PUPCULTURE WEST 57 is a domestic limited liability company organized under the laws of New York. The address for Service of Process is 1060 Broadway, 3001, Albany, NY 12204. The named recipient for the service of process for Defendant PUPCULTURE UWS LLC is Ibrahim Almimeh. PUPCULTURE UWS LLC owns, controls, and operates the Pupculture West 57 Facility.

14.    Defendant, JOHN DOE CORPORATION d/b/a/ PUPCULTURE SOHO is a domestic limited liability company organized under the laws of New York. JOHN DOE CORPORATION owns, controls, and operates PUPCULTURE SOHO.  The identity of JOHN DOE CORPORATION will be determined over the course of discovery in this lawsuit, and a subsequent amended complaint will be filed to identify such entities.

15.     Defendant IBRAHIM ALIMIMEH is the Owner of Corporate Defendants. IBRAHIM ALIMIMEH exercised control over the terms and conditions of the employment of Plaintiff, FLSA Collective Plaintiffs and Rule 23 Class members. IBRAHIM ALIMIMEH had the power and authority to (i) fire and hire; (ii) determine rate and method of pay; (iii) determine work schedules; and (iv) otherwise effect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Rule 23 Class members. He also had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and the Rule 23 Class members. He routinely visited the Pupculture Facilities to regularly and directly reprimand any employees who did not perform their duties correctly. Individual Defendant IBRAHIM ALIMIMEH ensured that managers implement Defendants' employment policies and pay practices and direct employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably. Defendant IBRAHIM ALIMIMEH often appeared at the Facilities to directly manage employees and give direction to managers.  Defendant IBRAHIM ALIMIMEH would instruct employees on duties and directly managed short-staffing and over-staffing by re-assigning employees to other duties.

16.     At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

17.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees employed by Defendants, (including receptionists, pet groomers, kennel attendants, pet sitters, and dog walkers employed by Defendants on or after the date that is three (3) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

6

18.    At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to (i) pay Plaintiff and other FLSA Collective Plaintiffs for all hours worked, including overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek, due to Defendants' policies of compensating Plaintiff and other FLSA Collective Plaintiffs at an improper straight time rate. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

19.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

20.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees of by Defendants, (including but not limited to receptionists, pet groomers, kennel attendants, pet sitters, and dog walkers employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "Class Period")).

21.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and

rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

22.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendants, as alleged herein, of: (i) failing to pay overtime premiums due to an improper straight time rate; (ii) failing to pay spread of hours premiums; (iii) failing to compensate Plaintiff and Class members weekly, no later than seven (7) calendar days later than the end of the week which the wages were earned in violation of NYLL; (iv) failing to provide Class members with proper wage statements with every payment of wages; and (v) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of New York Labor Law. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

23.     The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently based is within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class.

24.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

25.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiff in wage and hour cases.

26.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

27.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

28.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.   Whether Defendants employed Plaintiff and the Class within the meaning of New York Labor Law;

b.   What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class members;

c.   At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class members for their work;

d.   Whether Defendants properly notified Plaintiff and Class members of hourly rate and overtime rate;

e.   Whether Defendants improperly compensated Plaintiff and Class members at a straight time rate for all hours worked;

f.   Whether Defendants properly compensated Plaintiff and Class member their proper overtime premiums at the rate of one and one half times the regular rate for hours worked in excess of forty (40) hours per workweek;

g.    Whether Defendants properly compensated Plaintiff and Class members their proper spread of hours premiums;

h.    Whether Defendants provided proper wage statements informing Plaintiff and Class members of their proper overtime rate of compensation and other information required to be provided on wage statements, as required under New York Labor Law;

i.    Whether Defendants provided Plaintiff and Class members proper wage statements with each payment of wages, as required under New York Labor Law;

j.    Whether Defendants filed false information returns about Class members with the IRS;

k.    Whether Defendants failed to pay their share of FICA taxes for Class members to the IRS;

l.    Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law; and

m.    Whether employees are manual laborers pursuant to NYLL, who are required to be paid weekly.

## STATEMENT OF FACTS

29.    At the beginning of her employment until in or around January 2019, Plaintiff ASHLEY VILELLA was hired by Defendants to work as a Dog Walker at Defendants' Pupculture Soho Facility which is located at 521 Broome Street, New York, NY 10013.

30.    From the start of Plaintiff VILELLA's employment to January 2019, Plaintiff VILELLA worked as dogwalker at Defendants' SOHO location.

31.    In or around January 2019 to September 2019, Plaintiff VILELLA was transferred to work at Defendants' Pupculture Tribeca Street Facility, located at 170 Hudson Street, New York, NY 10013 to work as Kennel Assistant.

32.    Plaintiff VILELLA was then both transferred and promoted in September of 2019 to the Receptionist position at the Defendants place of business located at 170 Hudson Street, New York, NY 10013.  Plaintiff worked in this position at this location until May 2021.

33.    In or around May 2021 until October 2021, Defendants promoted Plaintiff VILELLA to a "Manager" for Defendants' Pupculture FIDI facility located at 21 Murray Street, New York, NY 10007. Despite holding a title of "Manager," Plaintiff could not hire, fire, or determine the schedule of other employees. Plaintiff VILLELA's duties for ninety (90%) percent of her time was receptionist work.

34.    In or around October 2021, upon returning from one-month unpaid leave, Plaintiff VILELLA was demoted to receptionist and was instructed to work at Defendants' Pupculture SOHO Street Facility located at 521 Broome Street, New York, NY 10013. Plaintiff VILELLA continued working at this location in this position until the end of her employment in January 2022.

35.    During Plaintiff's employment as a Dog Walker at Defendants' Pupculture SOHO Street Facility, Plaintiff worked five (5) days a week. Plaintiff worked from 4:00 p.m. to 8:00 p.m. Monday, Tuesday, Thursday, and Friday and from 11:00 a.m. to 7:00 p.m. on Sunday.

36.    During Plaintiff's employment as a Kennel Assistant at Defendants' Pupculture Tribeca Street Facility, Plaintiff worked five (5) days a week. Plaintiff worked from 8:00 a.m. to 4:00 p.m. Sunday to Thursday.

37.    During Plaintiff's employment as a Receptionist at Defendants' Pupculture Tribeca Street Facility, Plaintiff worked five (5) days a week. Plaintiff worked from 8:00 a.m. to 4:00 p.m. Sunday to Thursday.

38.    When Plaintiff got promoted to "Manager" at Defendants' Pupculture FiDi Street Facility, Plaintiff worked five (5) days a week. Plaintiff worked from 8:00 a.m. to 6:00 p.m. Sunday to Thursday.

39.    From the start of her employment until January 2019, Plaintiff was compensated at the minimum wage rate. After being promoted to Kennel Assistant in or around January 2019, Plaintiff's base salary increased to sixteen ($16.00) dollars per hour until September 2019. When Plaintiff was promoted to Receptionist in or around September 2019, her hourly rate was increased to seventeen ($17.00) dollars per hour until May 2021. Plaintiff's rate increased again to twenty-one ($21.00) dollars per hour when she was promoted to "Manager" in or around May 2021.

40.    Throughout Plaintiff's employment, Defendants compensated Plaintiff partially in cash and check. Defendants issued a check made payable to Plaintiff VILELLA for hours worked that were forty (40) hours or less per work week. Hours worked in excess of forty (40) per work week were compensated in cash.

41.    As a result of Defendants' paying Plaintiff, FLSA Collective Plaintiffs, and Class members in checks and cash, Defendants failed to provide Plaintiff, FLSA Collective Plaintiffs, and Class members with accurate IRS Forms W-2 for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff, FLSA Collective Plaintiffs, and Class members. In failing to account for these monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for at least five thousand dollars ($5000) to Plaintiff, FLSA

Collective Plaintiffs, and Class members for each fraudulent filing, which would have to be at least once a year.

42.     Defendants failed to properly provide Plaintiff and Class members with proper wage notices when they were hired and annually thereafter. Plaintiff did not receive any wage notice either upon being hired, annually since the date of hiring, or change of pay rate

43.  Defendants did not provide Plaintiff and Class members with proper wage statements for all relevant times. Class members also did not receive proper wage statements, in violation of NYLL, as Defendants did not account for all compensable hours of Plaintiff, FLSA Collective Plaintiffs, and the Class members.

44.  Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class members their spread of hours premiums.

45.  Defendants knowingly and willfully operated their business with a policy of not properly compensating Plaintiff, FLSA Collective Plaintiffs, and Class members for all their hours worked, including overtime, at either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half). Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under New York Labor Law.

46.  In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature.  Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiffs' interest in ensuring proper pay.  Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage

notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.  Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

47.  Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members.  Defendants' conduct actually harmed Plaintiff and Class members.  Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class members' rights.  This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law.  Moreover, Defendants failure to provide wage notices allowed Defendants to hide the proper frequency of pay to employees.  Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

48.  Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation.  The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class members.  This delayed payment caused Plaintiff to struggle to timely pay bills.  Class members similarly struggle to timely pay debts due to Defendants continued attempts to hide wrongdoing from employees.

49.  Throughout her employment, Defendants regularly failed to pay Plaintiff her wages within seven (7) days of the end of the week in which Plaintiff earned them, in violation of NYLL § 191(1)(a)(i).[1] Defendants would provide Plaintiff her wages biweekly despite NYLL requiring employees like Plaintiff be compensated on a weekly basis.   Therefore, Plaintiff and Class Members are owed liquidated damages equal to the late payment of wages and accrued interest on the delayed payments.

50.  Under New York Labor Law, all 'manual worker(s)' must be paid on a weekly basis. Pursuant to the New York State Department of Labor, manual workers includes non-exempt employees who spend more than twenty-five percent (25%) of their working time performing physical labor.  Here, the Class members spent most of their day engaged in physical labor. Among other activities, Plaintiff and the Class engaged in the following: (i) taking care of the animals in the kennel, (ii) receiving animals upon arrival patients to the Facilities, (iii) gathering and preparing grooming and care kits; (iv) keeping the Facility clean and clear of any garbage; (v) ensuring adequate stock of supplies; (vi) performing periodic cleaning and maintenance of the Facilities.

51.  Though Plaintiff held other titles, Plaintiff herself was titled to be as a Dog Walker and Kennel Assistant during her employment with Defendants.

52.  Further, manual workers generally include those employees, like Plaintiff and Class members, whose labor is easily interchangeable with other able-bodied individuals.  As workers earning only slightly above minimum wage, the jobs market itself demonstrates the interchangeability of Class members.  NYLL §191 was passed to protect individuals in the types

---

[1] *See Vega v. CM & Assoc. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1145-46 (App. Div. 1st Dept. 2019)

of low-wage, interchangeable jobs occupied by Plaintiff and the Class.  Plaintiff and the Class hold

positions with Defendants which are easily trained and may be easily replaced by other able-bodied

workers. The ease of replacement and low-wages of Plaintiff and the Class make them dependent

upon their weekly earnings.  This dependance and lack of job security, places Plaintiff and the

Class directly in the category of workers that NYLL intended to protect by ensuring they receive

their wages on a weekly basis.

53.  That Plaintiff and the Class members were engaged in easily trained, easily replaceable

positions are clearly demonstrated by their earnings.  During her employment, Plaintiff earned

$15.00 an hour, her pay was then raised to $16.00 an hour, then once again to $17.00 an hour, and

lastly to $21.00 an hour. For the majority of her employment, Plaintiff's pay was at a figure lower

than the average individual employed in New York State as a janitor, pest control worker, tree

trimmer, lawn supervisor, or waiter.[2]  Employees in those positions in New York State earned over

$19.00 an hour on average.  The jobs market itself demonstrates that Plaintiff, who worked in New

York City for $18.00 an hour, was not employed in a highly skilled position.  Given the low-wages

of the Class and realities of the Class's daily work, Class members must be afforded the protections

provided under NYLL §191.

54.  Defendants failed to provide proper wage notices to employees, including rate of

overtime compensation, among others, at the beginning of employment annually thereafter, or at

each change in pay rate pursuant to the requirements of New York Labor Law.

---

[2] https://www.bls.gov/oes/current/oes370000.htm; https://www.bls.gov/oes/current/oes353031.htm#st.

55.  Due to these unlawful acts of Defendants, Plaintiff suffered liquidated damages in an amount not presently ascertainable. In addition, Plaintiff is entitled to reasonable attorney's fees, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

56.  Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF FAIR LABOR STANDARDS ACT**

57.  Plaintiff repeats each and every previous allegation in this class and collective action Complaint as if fully set forth herein.

58.  At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

59.  At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

60.  At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

61.  At all relevant times, Defendants had a policy and practice of failing to pay wages for all hours worked.

62.  At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them wages in the lawful amount for all hours worked, including

those in excess of forty (40) hours worked each week, due Defendants' policy of compensating Plaintiff and FLSA Collective Plaintiffs at an improper straight time rate.

63. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked when Defendants knew or should have known such was due.

64. At all relevant times, Defendants had a policy and practice of failing to pay the proper overtime premium to FLSA Collective Plaintiffs for their hours worked.

65. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

66. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

67. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**VIOLATION OF NEW YORK LABOR LAW**

68.  Plaintiff repeats each and every previous allegation in this class and collective action Complaint as if fully set forth herein.

69.  At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of New York Labor Law, §§ 2 and 651.

70.  At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff and Class Members for all hours worked, including at the statutory rate of time and one-half the regular rate for overtime hours worked, due to Defendants' policy of compensating Plaintiff and Class Members at an improper straight time rate.

71.  At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff and Class Members their spread of hours premiums.

72.  Furthermore, Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their wages within seven (7) days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

73.  Defendants failed to provide a proper wage and hour notice, on the date of hiring and annually, to Plaintiff and Class Members, in direct violation of New York Labor Law.

74.  Defendants failed to provide proper wage statements with every payment issued to Plaintiff and Class Members, as required by New York Labor Law § 195(3).

75.  Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.  Defendants are required to provide itemized listings of deductions taken on each wage statement. Moreover, with respect to all employees, Defendants failed to provide wage statements that satisfied statutory

requirements under the NYLL because Defendants failed to disclose the proper hours, pay rate, overtime rate of pay, and overtime hours worked.

76.  Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under New York Labor Law.

77.  Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants unpaid overtime premium, unpaid spread of hour premiums, damages for unreasonably delayed payments, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to New York Labor Law.

**COUNT III**

**CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS
UNDER 26 U.S.C. § 7434(a)**

78.  Plaintiff realleges all the preceding paragraphs of this Complaint as if fully set forth herein.

79.  Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

80.  By failing to provide Plaintiff and Class members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

81.  Defendants filed fraudulent information with the IRS when they filed their legally mandatory annual Form 940 and quarterly Form 941 because they failed to include monies paid to Plaintiff and Class members—since their checks were never accompanied by the wage statements

that should have been the basis of the Forms 940 and 941 filings. Accordingly, these filings were fraudulent, having failed to accurately represent the actual amount of money that Defendants actually paid their employees.

82. Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

83. Defendants owe Plaintiff and Class members statutory damages of $5,000 for each violation.

84. Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff and the Class for reasonable attorney's fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of all unpaid waves, including overtime compensation, due to Defendants' policy of compensating Plaintiff and Class members at an improper straight time rate under FLSA and NYLL;

d.   An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements under NYLL;

e.   An award for compensation for unpaid spread of hours pursuant to NYLL;

f.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to NYLL;

g.   An award of liquidated damages and interest for each late payment of wages pursuant to NYLL § 191(1)(a)(i);

h.   An award of prejudgment and post-judgment interest, costs and expenses of this action, together with reasonable attorney's and expert fees and statutory penalties;

i.   Designation of Plaintiff ASHLEY VILELLA as Representative of FLSA Collective Plaintiffs;

j.   Designation of this action as a class action pursuant to F.R.C.P. 23;

k.   Designation of Plaintiff ASHLEY VILELLA as Representative of the Class; and

l.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: March 16, 2023                          Respectfully submitted,

                                               LEE LITIGATION GROUP, PLLC
                                               C.K. Lee (CL 4086)
                                               Anne Seelig (AS 3976)
                                               148 West 24th Street, Eighth Floor
                                               New York, NY 10011
                                               Tel.: 212-465-1180
                                               Fax: 212-465-1181
                                               *Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

                                               By: /s/ *C.K. Lee*
                                                    C.K. Lee