UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                                     :

ASHLEY VILELLA, *on behalf of herself, FLSA*
*Collective Plaintiffs and the Class*,
                                                     :

                                       Plaintiff,         :

                  -v-                                 :

PUP CULTURE LLC d/b/a PUPCULTURE,
PUPCULTURE DUMBO LLC d/b/a/ PUPCULTURE
DUMBO, PUPCULTURE FIDI LLC d/b/a/
PUPCULTURE FIDI, PUPCULTURE TRIBECA LLC
d/b/a/ PUPCULTURE TRIBECA, PUPCULTURE UWS
LLC d/b/a/ PUPCULTURE WEST 57, JOHN DOE
CORPORATION d/b/a PUPCULTURE SOHO, and
IBRAHIM ALIMIMEH,
                                                    :

                                Defendants.      :

---------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __11/17/2023__

23-cv-2291 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

      Plaintiff Ashley Vilella ("Vilella" or "Plaintiff") brings this action on behalf of herself

and similarly situated persons, alleging, *inter alia*, violations of the Fair Labor Standards Act of

1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL"), §§ 191 *et seq.*,

and asserting, as relevant here, claims for unpaid overtime wages, improper time rounding, and a

policy of time-shaving.  Dkt. No. 48 ¶¶ 66–86.

      Vilella moves for conditional certification of this action as collective action under FLSA,

29 U.S.C. § 216(b).  Dkt. No. 27.  She seeks: (1) conditional certification of the FLSA claim for

current and former non-exempt employees within the six-year period prior to the filing of the

Complaint; (2) approval and distribution of notice of the action to all covered employees; (3)

approval for opt-in plaintiffs to send consent forms to Plaintiff's counsel; (4) production of

certain information by the employer about covered employees; (5) the posting of notice in Defendants' business; and (6) equitable tolling of the statute of limitations period.  Dkt. No. 27-1 at 2–3.

For the following reasons, the motion for conditional class certification is granted as modified by this opinion.

## BACKGROUND

The following facts are drawn from the allegations of Plaintiff's first amended complaint and are taken as true for purposes of this motion.  The Court summarizes only those allegations most pertinent to the instant motion.

Defendant Pupculture LLC d/b/a Pup Culture ("Pupculture") is a New York corporation and parent company of five wholly-owned subsidiary stores (the "Operating Companies") located in New York City that operate day care services for dogs under the Pupculture name. Dkt. No. 48 ¶ 8.  The Operating Companies are located in midtown and downtown Manhattan and in Brooklyn, and provide services for dogs including walking, grooming, daycare, and boarding.  *Id.* ¶¶ 8–9.  Pupculture employs individuals to work as, among other things, receptionists, pet groomers, kennel attendants, pet sitters, and dog walkers.  *Id.* ¶ 17.  Defendant Ibrahim Alimimeh ("Alimimeh" and, collectively with Pupculture and the Operating Companies, "Defendants") is the owner of Pupculture and the Operating Companies, with the power to fire and hire, determine the rate and method of pay, determine work schedules, and otherwise alter the work terms and conditions of employees.  *Id.* ¶¶ 9, 15.

Vilella was employed at Pupculture from early 2017 until January 2022.  *Id.* ¶ 34.  Over the course of her five-year tenure, Vilella held four different positions at three of Pupculture's five locations.  Vilella began her employment at Pupculture as a dog walker at Pupculture's SoHo location.  *Id.* ¶¶ 29–30.  Two years later, in January 2019, she was transferred to

Pupculture's Tribeca store to work as a kennel assistant.  *Id.* ¶ 31.  In September 2019, Vilella became a receptionist at the Tribeca location.  *Id.* ¶ 32.  In May 2021, she was promoted to manager of the Financial District store.  *Id.* ¶ 33.  In October 2021, Vilella was demoted to her former position as a receptionist, this time at Pupculture's SoHo location, where she worked until the end of her employment with Defendants in January 2022.  *Id*. ¶¶ 33–34.  Though she was primarily stationed at one location at a time, Vilella alleges that Pupculture employees, herself included, would be transferred to different locations on a day-to-day basis as needed, though they would be paid from the same payroll.  *Id.* ¶¶ 9, 15.

Vilella alleges Defendants deprived her, and employees on whose behalf she seeks to bring the action, of wages in violation of FLSA (as well as the NYLL) in three ways: (1) by improperly compensating employees at a straight-time rate when the overtime premium rate was required; (2) by partaking in a policy or practice of time-shaving; and (3) by partaking in a policy or practice of improper rounding.  *Id.* ¶ 71.

First, Vilella contends that Defendants improperly compensated her at a straight-time rate when she should have received the overtime premium rate.  Vilella alleges that, from the start of her employment until January 2021, Defendants compensated her for up to eighty hours of work per two-week pay period by check, and hours worked in excess of eighty were compensated at a straight-time rate[1] in cash.  *Id.* ¶¶ 40–41.  She also alleges that "[t]hroughout" her employment, Defendants calculated her hours on a bi-weekly basis such that she only received overtime compensation when the hours she worked exceeded eighty hours within a two-week timespan, rather than when she worked more than forty hours in a single week, as required by FLSA.  *Id*

---

[1] The "straight-time rate" refers to the Plaintiff's regular hourly pay.  Under FLSA, employees are entitled to compensation at a rate of no less than one and a half times their hourly straight-time pay for any hours worked in excess of forty per week.  28 U.S.C. § 207(a).

¶ 41.  For example, for the eighty hours that Vilella worked in the two-week pay period beginning January 15, 2021 and ending January 28, 2021, she was compensated entirely at a straight time rate, although she alleges that she worked 40.5 hours in one week and 39.5 hours in the other, entitling her at least one half hour of pay at the overtime premium rate.  *Id.* ¶ 42.

Second, Vilella asserts that Defendants engaged in unlawful time-shaving.  After January 2021, Defendants allegedly required employees to clock out at the time their shift was scheduled to end so as to avoid having to compensate for all hours worked, including overtime hours.  *Id.* ¶ 48.  At the end of their scheduled shifts, Plaintiff and others were instructed to clock out, even when they still had work to complete.  *Id.*  Lastly, Vilella alleges a policy of biased rounding of hours to employees' detriment.  *Id.* ¶ 46.

In addition to the overtime violations, Vilella also alleges that Defendants violated the NYLL by failing to provide her and other employees similarly situated with proper wage notices when they were hired and annually thereafter, and by failing to provide her a proper wage statement with every payment that was issued to her.  *Id.* ¶¶ 51–52, 82–83.  Plaintiff did not receive any wage notice either upon being hired, annually since the date of hiring, or when her rate of pay changed.  *Id.* ¶ 51.  Plaintiff also was not provided with proper wage statements for all relevant times.  *Id.* ¶ 52.  Finally, she brings a claim for civil damages for fraudulent filing of information returns under 26 U.S.C. § 7434(a).  Dkt. No. 48 ¶¶ 87–93.

## PROCEDURAL HISTORY

Plaintiff commenced this action on March 16, 2023.  Dkt No. 1 at 24.  On September 28, 2023, Plaintiff filed her first amended complaint.  Dkt. No. 48.  Defendants filed their answer on October 17, 2023.  Dkt. No. 56.

Plaintiff filed this motion for conditional certification and an accompanying memorandum of law on August 10, 2023. Dkt. Nos. 27–28.[2] Plaintiff seeks conditional certification of a collective action comprised of all non-exempt employees of Pupculture—including, *inter alia*, receptionists, pet groomers, kennel attendants, pet sitters, and dog walkers. Dkt. No. 27-1 at 2. In support of the motion, Plaintiff relies on the allegations in the amended complaint, Dkt. No. 48, her paystubs, Dkt. No. 29-8, her own declaration as to FLSA violations she witnessed as to herself and others, Dkt. No. 55-1, the declaration of former Pupculture receptionist Elisa Munguia filed in a separate action against Pupculture in which a settlement was reached, Dkt. No. 31, and Munguia's time and pay records, Dkt. Nos. 29-2–29-3.[3] On August 24, 2023, Defendants filed a memorandum in opposition to the motion for class certification, contending that: (1) Plaintiff's filings were improperly submitted without a physical "wet" signature in violation of the Rules and Instructions for Electronic Case Filing and as required by 28 U.S.C. § 1746; and (2) even if accepted as properly submitted, Plaintiff did not meet her burden for conditional certification. Dkt. No. 33. In support of their second argument, Defendants also submitted four declarations by other Pupculture employees that, according to Defendants, refuted Plaintiff's allegations and warranted denial of Plaintiff's motion. Dkt. Nos. 35–38. Plaintiff moved to depose Defendants' declarants. Dkt. No. 40.

---

[2] Before filing the motion for conditional certification, Plaintiff moved for pre-certification class discovery on her anticipated motion for class certification under Federal Rule of Civil Procedure 23. Dkt. No. 20. The Court granted that motion in part and denied it in part. Dkt. No. 47.

[3] Plaintiff alleged that Defendants had not produced her time records as she requested. Dkt. No. 28 at 2. Plaintiff later informed the Court that Defendants had produced some of the requested records and requested leave from the Court to submit the newly produced evidence in her reply in support of her motion for conditional certification, Dkt. No. 40, which the Court granted, Dkt. No. 47.

On September 28, 2023, the Court denied Plaintiff's motion to compel deposition of Defendants' declarants as moot.  Dkt. No. 47 at 3.  Because the Court does not resolve factual disputes or make credibility determinations at the conditional certification stage, the Court gave Defendants the choice of either having the declarations considered and making the declarants available for deposition or withdrawing the declarations until discovery.  *Id.*  Defendants chose the latter.  *Id.*[4]  The Court accordingly found that Plaintiff's motion was mooted by Defendants' withdrawal of the declarations.  *Id.*  The Court also ordered that if Plaintiff submitted new evidence in connection with her reply, Defendants would be permitted to move to strike.  *Id.* at 4.

On October 2, 2023, Plaintiff filed her reply, and appended some of her time and pay records as well as additional time and pay records of Munguia.  Dkt. Nos. 51–52.  Defendants submitted a sur-reply with new evidence of their own on October 10, 2023, Dkt. Nos. 53–54, as authorized by the Court at a telephonic conference.  Three days later, Plaintiff filed her own sur-reply, contending that Defendants' sur-reply had not been authorized by the Court.  Dkt. No. 55.  She also resubmitted her declaration with the proper signature.  Dkt. No. 55-1.  She has not submitted Munguia's declaration with the proper "wet" signature.

The Court heard oral argument on November 14, 2023.  Dkt. No. 59.

## DISCUSSION

Plaintiff seeks conditional certification of her FLSA claims on behalf of "all non-exempt employees including receptionists, pet groomers, kennel attendants, pet sitters, and dog walkers, among others, who were employed within the last six . . . years by Defendants" at any of

---

[4] Defendants declined to make these declarants available for deposition.  Dkt. No. 40. Accordingly, the Court does not consider the declarations for their truth at this stage of the proceedings.  Defendants may renew their argument that Plaintiff and Declarant Munguia are not credible witnesses at a later stage of the proceedings, including in connection with a stage-two proceeding.

Defendants' five locations in New York.  Dkt. Nos. 27, 28 at 1.  She also seeks approval of the form of notice and proposed method of distribution.

The Court first considers whether the matter should be conditionally certified as a collective under FLSA and, if so, the scope of the certification.  Finding that Plaintiff has met the low burden necessary for conditional certification, the Court then turns to the timing, content, and distribution of the notice.

## I.      Conditional Certification

In lieu of class actions provided for by Federal Rule of Civil Procedure 23, FLSA provides that a suit for unpaid compensation against an employer may be joined by "similarly situated" employees in a "collective action."  28 U.S.C. § 216(b).  Courts have the "discretion, in appropriate cases, to implement" the collective-action provision of FLSA "by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010).  Courts in this Circuit facilitate notice to potential plaintiffs through "conditional" certification, which, as the first step of the two-stage certification process, generally occurs before discovery.  *Id.*  A court may, at the second step, revisit its decision to conditionally certify a FLSA collective based on the evidence produced in the course of discovery.  *See Mikityuk v. Cision US Inc.*, 2021 WL 1750370, at *4 (S.D.N.Y. May 4, 2021).

Because conditional certification only "involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred," *Martinez v. JVA Indus. Inc.*, 2021 WL 1263133, at *3 (S.D.N.Y. Apr. 6, 2021), rather than a final, binding determination as to the members of the collective action, the showing that a plaintiff must make in order to warrant conditional certification is "minimal," *Huer Huang v. Shanghai City Corp.*, 2020 WL

5849099, at *6 (S.D.N.Y. Oct. 1, 2020).  A plaintiff need only make a "'modest factual showing'

that [she] and potential opt-in plaintiffs 'together were victims of *a* common plan or policy that

violated the law.'"  *Myers*, 624 F.3d at 556 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249,

261 (S.D.N.Y. 1997) (Sotomayor, J.) (emphasis added)).  The plaintiff need not show that every

act that violated the plaintiff's rights under FLSA was also the product of a common plan or

policy.  The issue "is not whether Plaintiff[] and other [employees] were identical in all respects,

but rather whether they were subject to a common policy to deprive them of overtime pay when

they worked more than 40 hours per week."  *Pippins v. KPMG LLP*, 2012 WL 19379, at *5

(S.D.N.Y. Jan. 3, 2012) (internal quotation marks omitted).  The requisite factual showing

"cannot be satisfied simply by 'unsupported assertions,'"  *Myers*, 624 F.3d at 555 (quoting

*Dybach v. Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567 (11th Cir. 1992)), and "plaintiffs must

proffer substantial allegations of a factual nexus between the named plaintiffs and potential opt[-

]in plaintiffs with regard to their employer's alleged FLSA violations."  *Hamadou v. Hess Corp.*,

915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013) (internal quotation marks omitted).  A plaintiff may

meet this burden by showing, through her "pleadings, affidavits, and declarations, including any

hearsay statements contained therein," *Duran v. R&L Interior Renovations & Constr. Corp.*,

2021 WL 4847074, at *2 (S.D.N.Y. Oct. 18, 2021) (quoting *Morris v. Lettire Constr. Corp.*, 896

F. Supp. 2d 265, 269 (S.D.N.Y. 2012)), "that 'there are other employees who are similarly

situated with respect to their job requirements and with regard to their pay provisions.'"  *Hong v.*

*Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 126 (S.D.N.Y. 2022) (quoting *Fraticelli v. MSG*

*Holdings, L.P.*, 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014)).  If the Court determines that

the plaintiff has adequately met her burden, it will grant conditional certification and "order that

notice be given to members of the FLSA collective to afford them the opportunity to opt into the

action." *See, e.g.*, *Ruiz v. Truffa Pizzeria & Wine Room Corp.*, 2021 WL 568249, at *4 (S.D.N.Y. Feb. 15, 2021).  "At the second stage, after discovery is completed, [the] court will, on a fuller record, determine . . . whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." *Martinez*, 2021 WL 1263133, at *3.

The Court first addresses the evidence cognizable on this motion.  Defendants argue that the declarations of both Plaintiff and Munguia may not be taken for their truth and thus cannot furnish the requisite factual basis for conditional certification because neither declaration was properly signed; rather each declaration was merely "e-signed" with a slash "/s" notation in place of the physical signature of the declarant.  Dkt. No. 33 at 4–6.  Defendants are correct that the declarations do not satisfy the requirements of 28 U.S.C. § 1746.  That statute permits an unsworn declaration to substitute for a sworn declaration if it is subscribed in writing and signed. *Id.*  The character "/s/" "may substitute as a signature only for an *attorney* filing a document via the Electronic Case Filing system.  'Signatures for all other persons (clients, witnesses, etc.) must be scanned in order to capture the actual ink signature.'" *Dilworth v. Goldberg*, 2014 WL 3798631, at *1 (S.D.N.Y. Aug. 1, 2014) (quoting U.S. District Court, Southern District of New York, Electronic Case Filing Rules & Instructions § 13.14); *see also Krow v. Pine Bridge Inv. Holdings U.S. LLC*, 2022 WL 836916, at *10 n.15 (S.D.N.Y. Mar. 21, 2022).  The Court, however, need not bind itself to Plaintiff's declaration.  Plaintiff has since submitted a copy of her declaration with a wet signature.  Dkt. No. 55-1.  Although Defendants object to Plaintiff's submission of this new exhibit, Dkt. No. 57, the exhibit itself does not add any new argument, Defendants identify no prejudice from its consideration, and the Court has discretion to permit a sur-reply. *Endo Pharms. Inc. v. Amneal Pharms., LLC*, 2016 WL 1732751, at *9 (S.D.N.Y. Apr. 29, 2016).  Accordingly, the Court will not strike Plaintiff's declaration on the grounds that it

originally was not signed with a wet signature.  *Cf. Lau v. Specialized Loan Serv., LLC*, 2023 WL 6135553, at *7 n.2 (S.D.N.Y. Sept. 20, 2023) (excusing defendant's failure to serve a hard copy of its reply papers when plaintiffs conceded they were served in electronic form and later were served with paper copies).  The Munguia declaration, which remains unsigned, is entitled to no such weight.

The Court nonetheless finds that Plaintiff has made the modest showing necessary to satisfy conditional certification.  "Courts have found that conditional certification is appropriate where the plaintiff avers that other employees worked more than forty hours a week but were not paid overtime."  *Cheng v. Via Quadronno LLC*, 2021 WL 4319569, at *3 (S.D.N.Y. Sept. 23, 2021).  "A single affidavit from a named plaintiff is enough to make this showing."  *Id.*; *see also Ruiz*, 2021 WL 568249 at *4 (finding that plaintiff's sworn statement, which "identified [different kitchen employees] all of whom—like [plaintiff] himself—worked more than eight hours a day and more than forty hours per week without overtime" was sufficient for conditional certification).

Vilella's allegation that Defendants calculated overtime on a bi-weekly basis—shorting employees on overtime pay when the number of hours in excess of forty worked in one week were offset by the hours fewer then forty worked in a second—is corroborated by the documentary evidence she has submitted.  Vilella's time and pay records reflect instances in which Vilella worked more than forty hours in one week, but was not paid overtime because she worked fewer than forty hours in the other week in the pay period.  *See, e.g.*, Dkt. No. 48-8. Vilella's time sheet shows that her hours were calculated on a bi-weekly, rather than weekly, basis.  *Id.*  Vilella's claim that Defendants did not properly adhere to statutory overtime requirements is further corroborated by pay records of Munguia, which Vilella has submitted.

Dkt. No. 48-9.  Those records show, for example, that Munguia worked over forty-five hours in one week during an October 2021 pay period but was not paid overtime because she worked thirty hours the second week.  Dkt. No. 48 ¶ 44; Dkt. No. 48-9.  Since these documents evince a payroll violation, it stands to reason that other employees were similarly situated.  *See, e.g.*, *Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 2d 401, 409 (S.D.N.Y. 2018).

Plaintiff also declares under penalty of perjury that after January 2021, Defendants started demanding that employees clock out before they reached forty hours in a work week but that the employees continued to work thereafter, so that Defendants could avoid paying overtime.  Dkt. No. 55-1 ¶¶ 8–10.  She declares that after closing, when the employees' scheduled hours of work were over, the employees were instructed to clock out even if they had work to do.  *Id.* ¶ 9.  Further, when employees did not clock out as instructed, they still would be paid only for their scheduled time and not their actual time.  *Id.* ¶¶ 9–10.  She identifies a third employee with whom she discussed this specific issue and who was instructed to clock out to avoid overtime pay even though the employee continued working.  *Id.* ¶ 11.  Such evidence is sufficient for conditional certification.  *See, e.g.*, *Cheng*, 2021 WL 4319569, at *4 (explaining that even one or two sworn statements may satisfy conditional certification); *Leonardo v. ASC, Inc.*, 2018 WL 5981996, at *2 (S.D.N.Y. Nov. 14, 2018) (certifying collective based on plaintiff's sworn affidavit describing conversations with other employees, including timing and circumstances).  But Plaintiff also submits evidence showing that Defendants, when they did pay her and Munguia overtime, did so on a bi-weekly, rather than a weekly basis, which had the effect of undercompensating both employees for overtime hours they worked in one week if they did not work a full forty-hour week in the second.

Defendants dispute the factual allegations made against them and contend that they did not violate federal or state law.  *See, e.g.*, Dkt. No. 33 at 8–9.  However, "the Court does not resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations" at this early, pre-discovery stage; rather, the Court must merely decide whether the plaintiff has put forward sufficient evidence—if credited—of a common practice of FLSA violations. *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 268 (S.D.N.Y. 2007)).

Defendants also contend that Plaintiff has not adequately shown that other employees were "similarly situated" because Plaintiff's proposed collective action class—comprised of current and former non-exempt employees that worked as receptionists, pet groomers, kennel attendants, pet sitters, and dog walkers employed at each of their five locations—includes employees who held different positions than Plaintiff and worked in different locations.  Dkt. No. 33 at 16–17.  But "[i]t is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs . . . [a]s long as they were all similarly situated *with respect to being subject to the same policy* . . . and there exists a factual nexus among the plaintiffs." *Martinenko v. 212 Steakhouse Inc.*, 2022 WL 1227140, at *5 (S.D.N.Y. Apr. 26, 2022) (emphasis added) (quoting *Cano v. Four M Food Corp.*, 2009 WL 5710143, at *7 (S.D.N.Y. Feb. 3, 2009)).  The "similarly situated" inquiry requires employees to be similarly situated *with respect to their allegations that the law has been violated*, not similarly situated in their job title or responsibilities. *Hallissey v. Am. Online, Inc.*, 2008 WL 465112, at *2 (S.D.N.Y. Feb. 19, 2008); *see Martinenko*, 2022 WL 1227140, at *5.  Defendants' specific argument, then, that the class is properly limited to receptionists—the non-managerial role that

12

Plaintiff held during the three-year statute of limitations period—finds no basis in the law of this District.  Plaintiff herself was employed in two other roles—as a dog walker from January 2017 to January 2019, and as a kennel attendant from January 2019 to September 2019.  Dkt. No. 55-1 ¶¶ 1–2.  While Plaintiff may not recover on FLSA violations that occurred before the three-year statute of limitations period, her allegations that she experienced pay violations as a dog walker and kennel attendant may be considered as support for her claim that individuals in other roles were treated the same way.  *See, e.g.*, *Lazaar v. Anthem Co.*, 2023 WL 4113034, at *4 (S.D.N.Y. June 22, 2023) (collecting cases); *Martinenko*, 2022 WL 1227140, at *5 (considering a period that a plaintiff worked for defendant outside of the statutory period).[5]

Defendants' argument that the class should be limited to employees at the specific Pupculture locations where Vilella and Munguia worked, Dkt. No. 33 at 16–17, fares no better.  "In this Circuit, courts have regularly found Plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice."  *Huer Huang*, 2020 WL 5849099

---

[5] Defendants further dispute, Dkt. No. 33 at 6–7, whether the time and wage records submitted support Plaintiff's assertion in the first amended complaint that "Defendants improperly rounded employees' times to their detriment."  Dkt. No. 48 ¶ 46.  Time rounding practices "are not *per se* unlawful under the FLSA," if they are neutral on their face and in application and permit rounding in the employee's favor.  *Vasquez v. Victor's Café 52nd St.*, 2019 WL 4688698, at *3 (S.D.N.Y. Sept. 26, 2019).  "A neutral time-keeping system that permits both upward and downward rounding of each punch to the nearest quarter hour is permissible."  *Grande v. 48 Rockefeller Corp.*, 2023 WL 5162418, at *8 (S.D.N.Y. Aug. 11, 2023) (internal quotation marks omitted).  Defendants point to instances in which the time of Plaintiff or Munguia was properly rounded to their benefits—particularly when they clocked in a minute or two late.  The Court need not at this stage determine whether Plaintiff has put forward sufficient evidence to demonstrate a "rounding" violation or whether there was a common practice of improper rounding.  Plaintiff has submitted sufficient evidence of a common practice of not paying employees overtime for hours worked in excess of forty a week.  It is not necessary that each of the means used to deprive Plaintiff of her overtime were common to other employees for the Court to permit notice to issue.

(quoting *Hamadou*, 915 F. Supp. 2d at 662).  When determining which stores to conditionally certify, courts consider two factors: "whether the plaintiff[] [has] made an adequate factual showing to support an inference that such a uniform policy or practice exists, and whether the locations share common ownership or management." *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 558 (S.D.N.Y. 2013) (quoting *Hamadou*, 915 F. Supp. 2d at 662).

Both factors support granting conditional certification as to non-managerial employees who worked at all five of Pupculture's stores here.  First, Plaintiff has plausibly asserted that Defendants consistently underpaid employees by failing to pay them consistent with the hours they worked, regardless of location.  Plaintiff herself allegedly fell victim to underpayment at both the Tribeca and SoHo locations, and alleges that she had conversations with employees at both stores in which other employees disclosed that they were not being paid.  Dkt. No. 55-1 ¶ 7. Even if Plaintiff had not provided other corroborating evidence to that claim, her declaration alone is sufficient to support an inference of uniform practice across all five store locations.  *See, e.g.*, *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 562 (S.D.N.Y. 2015) (basing conditional certification of four store locations on single employee's affirmation that he was underpaid and had discussed underpayment with his co-workers from different locations); *Qing Tian Zhao v. Jia Xing 39th Inc.*, 2015 WL 1514950, at *3–4 (S.D.N.Y. Apr. 1, 2015) (conditionally certifying collective across four restaurant locations based on affidavit of a single employee who testified to common ownership and personal conversations with other employees who rotated among different locations); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 320, 322 (S.D.N.Y. 2007) (certifying class of "all non-exempt persons employed by Defendants in an hourly position, including but not limited to waiters, bartenders, runners and/or

14

bussers" where "all putative class members are employees of the same restaurant enterprise and allege the same types of FLSA violations").

Plaintiff also adequately demonstrates the second prong—that the various store locations were part of a single entity.  Plaintiff asserts, and Defendants do not contest, that all of the Pupculture stores operated under the same umbrella, and that there was centralized control over employment relations.  Dkt. No. 48 ¶¶ 15, 33.  Plaintiff's allegations establish common management and common ownership over all five Pupculture stores.  Although some lower-level managers were assigned to specific Pupculture store locations, employees at all five locations ultimately reported to Defendant Alimemeh, Pupculture's owner, who "often appeared at [the stores] to directly manage employees and give direction to [the lower-level] managers."  *Id.* Other managers, including, for a short time, Plaintiff, did not have hiring, firing, or scheduling power.  *Id.* ¶ 33.  Moreover, the "use of the same employees at multiple locations" and the "use of the same central payroll office" further reflect the integration between locations.  *Flores v. 201 West 103 Corp.*, 256 F. Supp. 3d 433, 442 (S.D.N.Y. 2017).  Plaintiff avers, Dkt. No. 55-1 ¶¶ 2–4, that Defendants frequently transferred employees, including Plaintiff, between locations, both on a day-to-day basis as needed and for more permanent changes in position, *see Huer Huang v. Shanghai City Corp*, 459 F. Supp. 3d 580, 589 (S.D.N.Y. 2020) ("The fact that a single manager transfers an employee from one location to another can add support to a claim that the two locations are not run independently but are interconnected.").  Despite these transfers, employees' hours were tracked across locations, and employees were paid out of the same payroll.  Dkt. No. 55-1 ¶ 4; *see Juarez v. 449 Restaurant, Inc.*, 29 F. Supp. 3d 363, 371 (S.D.N.Y. 2014) (Nathan, J.) (granting conditional certification across locations based on the fact that a plaintiff was subject to the same pay policies across the locations where he worked).  This

showing is enough, at this stage, to suggest that workers at all five locations were subject to the same pay practices.  Accordingly, the Court certifies notice of the collective action as to all non-exempt employees at all five Pupculture locations.

## II.    Proposed Judicial Notice and Consent Form

"Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court has broad discretion over the content of the notice." *Diaz v. N.Y. Paving Inc.*, 340 F. Supp. 3d 372, 386 (S.D.N.Y. 2018) (quoting *Martin v. Sprint/united Mgmt. Co.*, 2016 WL 30334, at *15 (S.D.N.Y. Jan. 4, 2016)).  The parties dispute the scope of the notice, its contents, and its distribution.  The Court addresses each in turn, mindful that "[i]n determining the particulars of the notice, courts are guided by the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burden on the defendants." *Han v. Madison Ave. Realties, LLC*, 2022 WL 2609003, at *5.  The Court's responsibility is to make sure that notice "is timely, accurate, and informative." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989).  At the same time, the Court must avoid "notices that are 'unduly argumentative, meant to discourage participation in the lawsuit, or are unnecessary or misleading.'" *Huer Huang*, 2020 WL 5849099, at *17 (quoting *Knox v. John Varvatos Enters.*, 282 F. Supp. 3d 644, 664 (S.D.N.Y. 2017)); *see also Mikityuk*, 2021 WL 1750370, at *7.

## A.    Scope of the Notice

The parties dispute the scope of the notice, including (1) whether employees who left Pupculture more than three years ago may receive the notice based on the applicable statute of limitations; (2) whether the limitations period should be equitably tolled; and (3) how long potential plaintiffs have to "opt in" to the collective action.

16

Plaintiff first proposes that the notice be sent to all similarly situated employees who were employed by Defendants at any time within the past six years based on the six-year statute of limitations period prescribed by the NYLL.  Dkt. No. 27-1 at 2.  Defendants challenge that request, Dkt. No. 33 at 13–14, on the grounds that FLSA's statute of limitations is limited to either two years or three years if the conduct was willful, 29 U.S.C. § 255(a).  Defendants contend that a two-year period is proper on the basis that Plaintiff has not sufficiently pleaded or demonstrated that Defendants' conduct was willful.  Dkt. No. 33 at 13–14.

The Court concludes, consistent with its prior rulings, that a three-year notice period is appropriate.  *See, e.g.*, *Mangahas v. Eight Oranges Inc.*, 2022 WL 10383029, at *6 (S.D.N.Y. Oct. 18, 2022).[6]  There is a division of authority in this District as to whether a three-year or a six-year period is appropriate for notice when an action includes NYLL claims.  *See Djurdjevich v. Flat Rater Movers, Ltd*., 2019 WL 125888, at *1 (S.D.N.Y. Jan. 7, 2019) (Nathan, J.).  Some Courts in this District have used a six-year period for reasons of judicial economy to facilitate notice to plaintiffs with FLSA claims who may also have NYLL claims, *see, e.g.*, *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 484 (S.D.N.Y. 2016), while others have used a three-year period to avoid confusing plaintiffs by notifying them of two disparate claims with different statutes of limitations, *Trinidad*, 962 F. Supp. 2d at 564.  The Court finds that the latter approach is more analytically coherent.  The fact that Plaintiff currently asserts NYLL claims is legally irrelevant to her motion for conditional certification.  *See, e.g.*, *Hamadou*, 915 F. Supp. 2d at 668.  The opt-in notice that will be sent to covered employees will operate only to make them

---

[6] A two-year period is not sufficient because the issue as to whether Defendants' conduct was willful is a factual dispute that the Court does not address at the conditional certification stage. *See, e.g.*, *Fasanelli*, 516 F. Supp. 2d at 323; *Han*, 2022 WL 2609003, at *5 ("Courts uniformly apply the three-year period for notice.").

plaintiffs for purposes of the FLSA claims. *See, e.g.*, *Mangahas v. Eight Oranges Inc.*, 2023 WL 3170404, at \*4 (S.D.N.Y. May 1, 2023); *Cheng v. Via Quadronno LLC*, 2022 WL 1210839, at \*3 (S.D.N.Y. Apr. 25, 2022). It will not make them members of a class—subject to Rule 23's more demanding requirements—for the purposes of pursuing a NYLL claim. *See Scott v. Chipotle Mexican Grill*, 954 F.3d 502, 518–19 (2d Cir. 2020). Nor will it authorize plaintiff's counsel to pursue a NYLL claim for them on their individual behalf. *See, e.g.*, *Cheng*, 2022 WL 1210839, at \*3. "[T]he opt-in notice . . . does not relate to any state law claims." *Hamadou*, 915 F. Supp. 2d at 668. For those persons who were last employed by Defendants more than three years ago, the delivery of a notice thus could only lead to confusion. *See, e.g.*, *Djurdjevich*, 2019 WL 125888, at \*1. At best, a person who receives a notice of the FLSA opt-in action and later receives a Rule 23 notice of the NYLL action would be confused as to why they are receiving two notices. *See id*. At worst, in the event a Rule 23 class is not certified, service of a FLSA notice with a six-year time period could lull the recipient into believing that, by submitting a consent to join the FLSA collective, she also has taken the actions necessary to become a plaintiff on the NYLL claims. *Trinidad*, 962 F. Supp. 2d at 564; *Hamadou*, 915 F. Supp. 2d at 668.

Accordingly, Notice should be sent to all similarly situated persons employed by Defendants in the three-year period prior to the filing of the complaint. *See Han*, 2022 WL 2609003, at \*5. Plaintiff has alleged willful violations, Dkt. No. 48 ¶¶ 23, 27, and Defendants have not challenged the sufficiency of that allegation through a motion to dismiss, *see* Dkt. No. 56 (Defendants' answer). A three-year period will ensure that notice reaches all similarly-situated employees who potentially have claims that can be addressed through this FLSA action. *Han*, 2022 WL 2609003, at \*5.

Plaintiff also requests equitable tolling of the statute of limitations for all potential members of the collective pending the expiration of the opt-in period.  Dkt. No. 27-1 at 3. Defendants object, contending that equitable tolling is not warranted here.  Dkt. No. 33 at 15–16. "[T]he language of FLSA and the Supreme Court's holdings do not allow for a rule of equitable tolling similar *to American Pipe* [*& Constr. Co. v. Utah*, 414 U.S. 538 (1974)] whereby the statute stops running merely upon the filing of a FLSA claim or a motion for conditional certification."  *Huer Huang*, 2020 WL 5849099, at *14.  What the Court stated in *Huer Huang* applies equally here: "The Court will wait to make a determination until it is confronted with individualized facts showing that a plaintiff whose claims accrued prior to the statute of limitations has been diligent in pursuing those claims. However, it is clear that the language of FLSA and the Supreme Court's holdings do not allow for a rule of equitable tolling similar to *American Pipe* whereby the statute stops running merely upon the filing of a FLSA claim or a motion for conditional certification." *Id.*

Finally, the parties dispute the applicable opt-in period.  Plaintiff contends that a ninety-day opt-in period is appropriate, Dkt. No. 29-1 at 3, while Defendants say that sixty days is more consistent with District case law, Dkt. No. 33 at 16.  The Court grants a sixty-day opt-in period after conditional certification, as is typical for courts in this District.  *See, e.g.*, *Huer Huang*, 2020 WL 5849099, at *17.  While some courts have granted ninety-day opt-in periods, such grants are generally made when the parties agree on the period or when special circumstances require an extended opt-in period.  *Id.* at *18.  Defendants do not agree to a ninety-day period, and the Court finds no such special circumstances in this case.  *See, e.g.*, *Bittencourt v. Ferrara Bakery & Café Inc.*, 310 F.R.D. 106, 117 (S.D.N.Y. 2015).  Accordingly, the notice should be amended to provide for a sixty-day opt-in period.

**B.      Content of the Notice**

The parties also dispute the proper language of the notice.  Defendants argue that several

modifications to Plaintiff's proposed notice are necessary.  One such modification is that the

notice be amended to repeatedly include language that opt-in plaintiffs can retain independent

counsel.  Dkt. No. 33 at 18–19.  But this additional language is unnecessary, as the Plaintiff's

proposed notice already makes clear that potential plaintiffs have the option to retain

independent counsel.  Dkt. No. 29-1 at 5 ("If you do not want to be represented by [Plaintiff's

counsel], you may choose to retain your own counsel (at your own expense).").  Accordingly,

Defendants' request for several additional exhortations regarding independent counsel is denied

as redundant.  *See Knox*, 282 F. Supp. 3d at 666 ("It is sufficient for notice to point out . . . that

opt-in plaintiffs are free to secure their own legal representation.").

Defendants next contend that Plaintiff's proposed collective notice should be modified to

include contact information for Defendants' counsel.  Dkt. No. 33 at 20–21.  The notice, at

present, identifies Defendants' counsel by firm name, but does not include the name of defense

counsel or defense counsel's contact information.  Dkt. No. 29-1 at 3–4.  However, "inclusion of

a defendant's identity and contact information is common in this District," and thus Plaintiff's

"proposed notice should be supplemented to include defense counsel's information."  *Zhao v.

Surge Private Equity LLC*, 2023 WL 3477591, at *8 (S.D.N.Y. May 16, 2023).  Plaintiff has

proposed, and the Court agrees, that the notice should inform the recipients that "[i]f you choose

to join this case, you should not contact the Defendants' lawyers directly yourself."  Dkt. No. 29-

1 at 4.  That language is sufficient to guard against the risk that a potential plaintiff will

mistakenly reach out to Defendants' counsel while preserving the right of an employee who

chooses not to join the action to reach out to Defendants for information or to provide assistance.

*See Cheng*, 2021 WL 4319569, at *6.

Defendants also object to the language about the statute of limitations continuing to run for potential plaintiffs.  Dkt. No. 33 at 15–16.  The Court agrees that the language "your legal rights may be affected and you have a choice to make now," Dkt. No. 29-1 at 3, could be misleading, particularly to lay employees, as drafted.  Such language could be read to suggest that, if members of the collective do not opt in, they will have no other available potential remedy.  Members of the collective do not necessarily have to immediately decide whether to opt in or risk waiving all FLSA claims against Defendants.  The language is unnecessary and should be stricken.

Defendants further assert that the notice include a more detailed account of their defenses, on the grounds that Plaintiff's proposed language—which states that "Defendants deny these allegations," Dkt. No. 29-1 at 3—insufficiently represents their position, Dkt. No. 33 at 19–20.  But the Court finds such language to be sufficient.  *See, e.g.*, *Delaney v. Giesha*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) (approving notice statement that explained that the defendant "denies that they violated the Fair Labor Standards Act").  "Courts in this Circuit have found proportionality the key to assessing whether a proposed notice adequately captures the defendant's proposition."  *Hernandez v. Merrill Lynch & Co., Inc.*, 2012 WL 1193936, at *6 (S.D.N.Y. Apr. 6, 2012) (citation omitted).  It is necessary that the notice inform putative members of the collective of the allegations in the lawsuit; it is not necessary that the notice inform such persons of all of Defendants' defenses.  At this stage, further information regarding the defenses offered by Defendants would be confusing to potential opt-ins, unnecessary, unduly argumentative, and may "discourage participation in the lawsuit."  *Martinenko,* 2022 WL 1227140, at *7 (quoting *Huer Huang*, 2020 WL 5849099, at *17).  For the same reason, the notice need not incorporate Defendants' rephrasing of what they believe is required of opt-in

plaintiffs Dkt. No. 33 at 20.  Plaintiff's proposed notice informs employees that if they join the lawsuit, they will be bound by any ruling, whether favorable or unfavorable, and will share in any proceeds, but also may be required to provide documents or information relating to their employment "or otherwise participate in written discovery, depositions, and/or in a trial of this matter" and adds a document preservation warning.  Dkt. No. 29-1 at 4.[7]  The language is sufficient to inform persons of their obligations if they join the lawsuit.  *See Martinenko*, 2022 WL 1227140, at \*11; *Mikityuk*, 2021 WL 1750370, at \*8.

Finally, Defendants argue that the proposed notice's language stating that "the Court may ultimately determine that you do not have a claim if you were not employed by Defendants within the applicable period before you joined this lawsuit" is underinclusive.  Dkt. No. 33 at 19. The Court agrees that the notice's current language is too specific and may mislead potential opt-in plaintiffs into believing their claims have already been adjudicated by this Court. Accordingly, the notice should be amended to read: "The Court may ultimately determine that you do not have a claim."  *See, e.g.*, *Ruiz*, 2021 WL 568249, at \*6 (requiring the inclusion of such language to ensure that the notice is not misleading).

## C.    Distribution of the Notice

Plaintiff requests that the Court direct Defendants to produce "the names, social security numbers, titles, compensation rates, dates of employment, last known mailing addresses, email addresses and all known telephone numbers of all Covered Employees" within ten days of the Court's order.  Dkt. No. 27-1 at 3.  Defendants appear to argue that provision of only names is appropriate on the ground that Plaintiff has not provided a specific justification for each of the

---

[7] However, the notice should be revised to make clear to employees that if they join, they will be bound by rulings and settlements with respect to Plaintiff's FLSA claim and will be permitted to share in proceeds from a settlement or favorable judgment of the FLSA claim.

other categories of information.  *See* Dkt. No. 33 at 22–23.  However, "[c]ourts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action."  *Benavides*, 166 F. Supp. 3d at 488.  And "[t]hough it does not appear as commonplace as ordering production of names and addresses," *Diaz*, 340 F. Supp. 3d at 387, several courts in this Circuit have found that plaintiffs are entitled to the job titles of potential opt-in plaintiffs, *see, e.g.*, *Benavides*, 166 F. Supp. 3d at 488; *Hong*, 582 F. Supp. 3d at 131; *Ni v. Red Tiger Dumpling House Inc.*, 2020 WL 7078533, at *13 (E.D.N.Y. Nov. 30, 2020); *Strauch v. Comput. Sci. Corp.*, 2015 WL 75884, at *4 (D. Conn. Jan. 6, 2015).  Accordingly, the Court, consistent with others in this District, will allow discovery of the names, titles, mailing addresses, email addresses, telephone numbers, and dates of employment of the members of the putative class.  *See Han*, 2022 WL 2609003, at *5 (collecting cases).  Plaintiff's request for the social security numbers of employees, however, is denied as premature and overbroad.  "The request to compel production of social security numbers is within the Court's sound discretion." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011).  Plaintiff seeks opt-in plaintiffs' social security numbers for purposes of performing "skip trace[s]" to obtain valid addresses, Dkt. No. 28 at 21, but has not shown that the contact information, including employees' addresses, that she will get from Defendants is "insufficient to effectuate notice," *Whitehorn*, 767 F. Supp. 2d at 448.  If Plaintiff finds "that a large number of notices are returned as undeliverable, the Court can consider [the request for social security numbers] at that time."  *Delaney*, 261 F.R.D. at 60.  But the Court declines to order production of such sensitive information without some showing of necessity.  Accordingly, the Court orders Defendants to produce all of the employee information that Plaintiff requests except for the employees' social

security numbers.  And, contrary to Defendants' contentions, Dkt. No. 33 at 24, ten business

days is not an unduly burdensome time for such productions since Defendants' own submissions

reflect that the information to be produced is readily available and easily accessible.  *See, e.g.*,

*Martin*, 2016 WL 30334, at *20.

Plaintiff also requests that the notice be posted in Defendants' places of business where

potential opt-in plaintiffs are employed.  Dkt. No. 27-1 at 3.  The Court approves the posting of

notices in Defendants' businesses.  *See Whitehorn*, 767 F. Supp. 2d at 449 ("Courts routinely

approve requests to post notice on employee bulletin boards and in other common areas, even

where potential plaintiffs will also be notified by mail."); *Garcia Ramos v. DNC Food Serv.*

*Corp.*, 2020 WL 2832776, at *10 (June 1, 2020).  Defendants do not object to such posting.  *See,*

*e.g.*, *Yap*, 146 F. Supp. 3d at 567 (approving workplace postings where the "Defendants do not

explain how such a posting would be more burdensome").  Notice of the action, posted outside

of locations to which customers have access, "maximizes potential plaintiffs' opportunities to be

informed of the pendency of the litigation and consider whether to opt in."  *Mendoza v. Ashiya*

*Sushi 5, Inc.*, 2013 WL 5211839, at *9 (S.D.N.Y. Sept. 16, 2013); *see also Bittencourt*, 310

F.R.D. at 118 (rejecting a defendant-employer's challenge to posting notice in the workplace as

duplicative of mailing notice).

Finally, Defendants assert that opt-in plaintiffs should be required to mail their signed

consent forms to the Clerk of Court, Dkt. No. 33 at 17, rather than to Plaintiff's counsel as

Plaintiff proposes, Dkt. No. 29-1 at 6.  Specifically, Defendants posit that having collective

action members mail their consent forms to Plaintiff's counsel "can discourage opt-in plaintiffs

from retaining independent counsel."  Dkt. No. 33 at 17.  Although this District is split on this

issue, *see Benavides*, 166 F. Supp. 3d at 486 (collecting cases), the Court here "follows the

majority of courts," *id.*, and finds that instructing potential collection action members to mail their consent forms to Plaintiff's counsel is appropriate.  "Doing so is . . . appropriate here because the Notice explicitly advises potential opt-in plaintiffs that they may consult or retain another attorney, mitigating concerns that putative class members may be discouraged from retaining their own counsel."  *She Jian Guo v. Tommy's Sushi Inc.*, 2014 WL 5314822, at *5 (S.D.N.Y. Oct. 16, 2014).  The consent forms may be sent to Plaintiff's counsel, but counsel is ordered to file the consent forms on the ECF docket within twenty-four hours of receipt. *Martinenko*, 2022 WL 1227140, at *8.

## CONCLUSION

For the foregoing reasons, the motion for conditional class certification is GRANTED as MODIFIED.  Plaintiff is directed to meet and confer with Defendants and to submit a revised notice consistent with this opinion by December 1, 2023.

The Clerk of Court is respectfully directed to close Dkt. No. 27.


SO ORDERED.

Dated: November 17, 2023
      New York, New York

                                     LEWIS J. LIMAN
                            United States District Judge