USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/19/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ASHLEY VILELLA, *on behalf of herself, FLSA Collective Plaintiffs and the Class*,

Plaintiff,

-v-

PUP CULTURE LLC d/b/a PUPCULTURE, PUPCULTURE DUMBO LLC d/b/a PUPCULTURE DUMBO, PUPCULTURE FIDI LLC d/b/a PUPCULTURE FIDI, PUPCULTURE TRIBECA LLC d/b/a PUPCULTURE TRIBECA, PUPCULTURE UWS LLC d/b/a PUPCULTURE WEST 57, JOHN DOE CORPORATION d/b/a PUPCULTURE SOHO, and IBRAHIM ALIMIMEH,

Defendants.

23-cv-2291 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Ashley Vilella ("Vilella" or "Plaintiff") moves for an order enforcing an alleged settlement. Dkt. No. 89. For the following reasons, the motion is denied.

**BACKGROUND**

Plaintiff was employed by Defendants[1] as a dog walker, kennel assistant, receptionist, and manager over the time period from January 2019 to January 2022. Dkt. No. 48 ¶¶ 29–34. During that time, there were occasions when she worked more than 40 hours in a week without being paid at an overtime rate. *Id.* ¶¶ 40–44. She also alleges that she was not paid for all hours

[1] Defendants are Pup Culture LLC d/b/a Pupculture, Pupculture Dumbo LLC d/b/a Pupculture Dumbo, Pupculture Fidi LLC d/b/a Pupculture Fidi, Pupculture Tribeca LLC d/b/a Pupculture Tribeca, Pupculture UWS LLC d/b/a Pupculture West 57, John Doe Corporation d/b/a Pupculture Soho, and Ibrahim Alimimeh. For convenience, they will be referred to herein collectively as "Defendants" or "Pupculture."

worked, was not given proper wage notices or wage statements, and was not paid a spread of hours premium. *Id.* ¶¶ 48–49, 51–53.

Plaintiff filed this action on March 17, 2023, as a putative collective and class action, complaining of violations of the Fair Labor Standards Act of 1938 ("FLSA") and the New York Labor Law ("NYLL"). Dkt. No. 1. Plaintiff marked the case as related to an earlier filed action that was brought by another employee of Pupculture against the same Defendants, alleging the same claimed labor law violations, *Munguia v. Pup Culture LLC et al.*, 22-cv-5744 (S.D.N.Y. 2022), but that case was closed after it settled. Dkt. No. 3. The instant case was not accepted as related and was instead assigned to the undersigned.

While this case has been pending, the parties have engaged in intermittent settlement discussions. On May 19, 2023, the parties filed a joint letter requesting that the Court refer the case to the Southern District Mediation Program and adjourn the initial case management conference and all other dates sine die so the parties could engage in class mediation. Dkt. No. 13. The Court granted that motion and referred the parties to mediation. Dkt. Nos. 14–15.

The parties participated in a mediation on June 23, 2023, but were unable to reach a settlement. Dkt. No. 91 ¶ 2; *see also* Dkt. No. 19 (final report of mediator that the mediation was unsuccessful).

On July 23, 2023, Defendants served Plaintiff with a Rule 68 offer of judgment to resolve Plaintiff's individual claims in the amount of $50,000. Dkt. No. 98 ¶ 8; Dkt. No. 98-1. The offer of judgment stated that it was made "in consideration of Plaintiff dismissing the above-captioned action with prejudice." Dkt. No. 98-2 at 2. Plaintiff did not accept the offer of judgment.

Efforts to settle did not end there. On August 3, 2023, the Court held an initial case management conference and issued an order referring the case to Magistrate Judge Stewart D. Aaron for settlement purposes. Dkt. Nos. 21–22. On September 22, 2023, the parties attended a settlement conference before Judge Aaron, but were unable to reach a settlement. Dkt. No. 91 ¶ 4. Instead, on October 17, 2023, Plaintiff's counsel countered Defendant's settlement offer with a settlement demand to resolve Plaintiff's claims and the potential and prospective claims of another person, later identified as Ms. Abundiz. Dkt. No. 98 ¶ 9; Dkt. No. 98-3. Defense counsel did not accept the offer, indicating that Defendant could not "pay that much" and that at the demand Plaintiff was making it would make "more sense to settle on a class basis." Dkt. No. 98-3 at 1.

The correspondence that gives rise to the instant motion begins on October 24, 2023. On that date, at 5:00 P.M., Defendants' then-counsel, Israel Klein, emailed Plaintiff's counsel, C.K. Lee, that "new counsel will be stepping in on this matter. In a final attempt to resolve this matter, our client has authorized us to offer [redacted] to resolve the Plaintiff's individual claims." Dkt. No. 91-1; Dkt. No. 98-4 at 2; *see* Dkt. No. 91 ¶ 5; Dkt. No. 98 ¶ 11.

A week and a half later, on Sunday, November 5, 2023, Mr. Lee replied, "We accept this offer. We will send you paperwork on Monday. Thank you." Dkt. No. 91-1 at 2; *see* Dkt. No. 91 ¶ 6; Dkt. No. 98 ¶ 12.

The following afternoon, Monday, November 6, 2023, Mr. Klein, on behalf of the Defendants, responded: "Thank you CK. Please confirm, as we previously discussed, that you are not currently retained by any other individual to pursue any claims against any of the pupculture entities or Mr. Alimimeh, and that you have no current plans to pursue any claims against them. Please also advise if we can pay the settlement figure in installments as we did in

the previous matter." Dkt. No. 98-4 at 1; *see* Dkt. No. 98 ¶ 13. Approximately four hours later, an employee of Plaintiff's counsel's law firm, replied with an emoji "thumbs-up." Dkt. No. 98 ¶ 14; Dkt. No. 98-4 at 1.

The settlement documents were not forthcoming the following day, Tuesday, November 7, 2023. On Wednesday, November 8, 2023, Mr. Klein emailed Mr. Lee to "provide the settlement documents for our review. Please also send a letter to the court advising that the matter has been resolved. There is oral argument scheduled on Tuesday and we should give the court note that it can clear its calendar. Thank you." Dkt. No. 98 ¶ 15; Dkt. No. 98-5 at 1.

Later that night, on November 8, 2023, Mr. Lee replied that he was in Hong Kong, but "would like to speak to work out logistics and details Thur[sday] or Friday." Dkt. No. 98-6 at 1; Dkt. No. 98 ¶ 15. Mr. Klein responded that he would be available the following day, November 9, 2023. Dkt. No. 98-6 at 2.

On November 9, 2023, Mr. Klein spoke to Mr. Lee by telephone. Mr. Klein has submitted a declaration, relaying the contents of the conversation. Dkt. No. 98. Mr. Lee has not submitted his own declaration regarding that conversation or disputed Mr. Klein's account. During the call, according to Mr. Klein, Mr. Lee informed Mr. Klein for the first time that he was retained to represent another employee and intended to add her as a second named Plaintiff in the action. Mr. Klein responded that the discontinuance of the entire action was a material term of Defendants' settlement offer and that the settlement could not proceed if the other employee was added to the action as a second named Plaintiff. *Id.* ¶ 16.

According to Mr. Klein, during the November 9, 2023 conversation, Mr. Lee did not object to Defendants' statement that discontinuance of the entire action was a material term of Defendants' settlement offer and that settlement could not proceed if the second plaintiff was

added to the action. *Id.* ¶ 17. Instead, Mr. Lee confirmed that he shared that understanding of the offer and relayed a counter-demand to settle the entire action as follows: (1) the agreed-upon settlement amount to be paid to Plaintiff, upon receipt of which Plaintiff would discontinue her action; and (2) Ms. Abundiz would file her claims on behalf of a class in state court, which Ms. Abundiz would agree to settle on a class-wide basis for a specified sum. A text sent by Mr. Lee on November 9, 2023, corroborates that account. It reads: "Hi just to clarify for the class, it will be [redacted] fully paid in state court with no reversion. All unclaimed funds will be paid to my admin company as admin fees. Thanks." Dkt. No. 98-3 at 3.

On November 10, 2023, Mr. Klein rejected Mr. Lee's counter-demand and responded: "My client will settle the plaintiff's claim for [redacted] if this matter is discontinued. If you want to bring a subsequent litigation, my client will address those claims separately." *Id.* at 4; *see* Dkt. No. 98 ¶ 18.

During this entire time, the litigation continued. On August 7, 2023, Defendants answered the complaint, Dkt. No. 25, and on August 10, 2023, Plaintiff filed what became a hotly contested motion for conditional certification of a FLSA collective pursuant to 29 U.S.C. § 216(b), Dkt. No. 27. The motion for an order certifying the matter as a collective action became fully submitted in October 2023, when Plaintiff submitted her reply memorandum of law in support of that motion, Dkt. No. 51, Defendants submitted a surreply, Dkt. No. 54, and Plaintiff submitted a supplemental reply memorandum, Dkt. No. 55.[2] On September 28, 2023, Plaintiff filed her First Amended Complaint, Dkt. No. 48, and, on October 17, 2023, Defendants answered the First Amended Complaint, Dkt. No. 56.

---

[2] There was additional correspondence related to the motion for conditional certification. *See* Dkt. Nos. 57–58.

Defendants claim that, on November 13, 2023, Mr. Lee rejected Defendants' settlement offer when he filed a consent to join the action by Ms. Abundiz as a second-named Plaintiff. Dkt. No. 98 ¶ 19; *see* Dkt. No. 60.

On November 14, 2023, the parties appeared before the Court telephonically for oral argument on Plaintiff's motion for collective certification. During argument, Plaintiff's counsel did not notify the Court of the alleged settlement agreement. Dkt. No. 98 ¶ 20.

On November 17, 2023, the Court filed an Opinion and Order granting the motion for conditional certification. Dkt. No. 69.

On December 15, 2023, Plaintiff's counsel provided Defendants with a proposed settlement agreement, for a settlement of the claims of Vilella on an individual basis on the terms conveyed on October 24, 2023 and purportedly accepted on November 5, 2023. Dkt. No. 91 ¶ 7; Dkt. No. 91-2; Dkt. No. 98 ¶ 22. The settlement agreement included a general release by Vilella of her claims against Defendants but did not include a provision for dismissal of this action. Dkt. No. 91-2. By that time, Mr. Lee had filed consents to become party plaintiff on behalf of two additional alleged members of the FLSA collective. Dkt. Nos. 75–76. Ultimately, 11 persons—in addition to Vilella and Abundiz—asked to become parties to this action. Dkt. Nos. 75–80, 82–83, 86–88.

On January 29, 2024, new counsel for Defendant emailed Plaintiff's counsel that "no agreement was reached as a result of the addition of a new named plaintiff." Dkt. No. 91-3 at 2.

This motion followed.

**DISCUSSION**

Plaintiff moves to enforce what she claims is a settlement reached between Vilella and Defendants. Defendants claim no agreement was reached. Each party presents a different account of the relevant events.

Plaintiff argues that a settlement was reached on November 5, 2023, Dkt. No. 91 ¶ 6, when Plaintiff's counsel replied to Defendant's offer of settlement with the email message: "We accept this offer. We will send you paperwork on Monday." Dkt. No. 91-1.

Defendants argue that there is more to the story. According to them, the settlement discussions occurred against the backdrop of the resolution of the prior similar action that Mr. Lee filed in this District against the same Defendants raising the same labor law violations, *Munguia*, 22-cv-5744. In that case, counsel alleged on behalf of Elisa Munguia that Defendants violated the FLSA and NYLL by not paying her overtime or for all hours worked and committed other related Labor Law violations. The parties settled the plaintiff's individual claims in that matter prior to the certification of a class collective in exchange for the dismissal of the action. Defendants argue that the negotiations in this case can be understood only by considering the negotiations and resolution of that case. Dkt. No. 98 ¶ 6. Defendants argue that they agreed to pay a large sum to the plaintiff in that action because the settlement resulted in the discontinuance of the action and that it was understood that a similar term would apply with respect to this action, which Plaintiff's counsel repudiated when he filed an opt-in notice on behalf of a new plaintiff here.

Each party has submitted declarations setting forth the evidence that they ask the Court to rely upon. Plaintiff relies upon the declaration of Mr. Lee, which attached the October 24 and November 5 emails. Dkt. Nos. 91–91-1. Defendants rely upon the declaration of their former counsel Mr. Klein, which attaches the text and email messages that surround the October 24 and November 5 communications and also relays the contents of the November 9, 2023 conversation. Dkt. Nos. 98–98-6. The Court invited the parties to request a hearing. Dkt. No. 102. Each side

responded that they did not request a hearing. Dkt. Nos. 107–108. Accordingly, the Court decides the instant motion on the papers.

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Velazquez v. Yoh Servs., LLC*, 2017 WL 4404470, at *2 (S.D.N.Y. Sept. 25, 2017) (internal quotation marks omitted) (quoting *BCM Dev., LLC v. Oprandy*, 490 F. App'x 409, 409 (2d Cir. 2013) (summary order)); *see also Omega Eng'g Inc. v. Omega, S.A.*, 432 F.3d 437, 444 (2d Cir. 2005) ("A trial court has inherent power to enforce summarily a settlement agreement when the terms of the agreement are 'clear and unambiguous.'") (quoting *Audubon Parking Assocs. Ltd. P'ship v. Barclay & Stubbs, Inc.*, 626 A.2d 729, 723 (Conn. 1993)); *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) ("A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it."). "The party seeking to enforce the purported agreement bears the burden of proving that the parties entered into a binding agreement." *Velazquez*, 2017 WL 4404470, at *2; *see also Bluelink Mktg. LLC v. Carney*, 2017 WL 4083602, at *5 (S.D.N.Y. Sept. 15, 2017). Plaintiff has not satisfied its burden.

The Court applies the four-factor test set forth in *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78 (2d Cir. 1985), to determine whether the "parties intended to be bound by a settlement agreement in the absence of a document executed by both sides," *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997). The four *Winston* factors are: "(1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Ciarmella*, 131 F.3d at 323;

*see also Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007); *In re Elysium Health-ChromaDex Litig.*, 2022 WL 1156181, at *5 (S.D.N.Y. Apr. 19, 2022), *aff'd sub nom. Elysium Health, Inc. v. ChromaDex, Inc.*, 2023 WL 7037442 (2d Cir. Oct. 26, 2023).

"The first factor is satisfied when there has been no express reservation, and when the circumstances and actions of the parties indicate no reservation, of the right not to be bound absent a written agreement." *Geneva Labs. Ltd. v. Nike West Afr. Import & Export Inc.*, 2021 WL 7287611, at *5 (E.D.N.Y. Aug. 16, 2021), *report and recommendation adopted*, 2022 WL 673257 (E.D.N.Y. Mar. 7, 2022) (first citing *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 249 (E.D.N.Y. 2002), and then citing *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984)). The first factor is said to be "frequently the most important." *Brown v. Cara*, 420 F.3d 148, 154 (2d Cir. 2005). That factor cuts slightly in favor of Plaintiff. The correspondence between the parties appears, on its face, to be unequivocal. Defendants' counsel states the sum of money it is prepared to offer "to resolve this matter" and Plaintiff's counsel responds, "We accept this offer. We will send you paperwork on Monday." Dkt. No. 91-1. There appears to be no reservation on either side.

The remaining factors, however, all cut against the existence of an enforceable settlement agreement. The second factor asks whether there has been partial performance of the contract. "[P]artial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts performance signals, by that act, that it also understands a contract to be in effect." *R.G. Grp.*, 751 F.2d at 75–76. "To have partial performance, there must be some actual performance of the contract, such that the party asserting the existence of the contract conferred something of value upon the party disclaiming existence of the contract, which the latter party accepted." *Grgurev v. Licul*, 2016 WL 6652741, at *5 (S.D.N.Y. Nov. 10, 2016) (internal

quotation marks omitted and alterations adopted) (quoting *Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*, 2011 WL 5531018, at *4 (S.D.N.Y. Nov. 14, 2011)).

There was no partial performance by Plaintiff in the period between November 5, 2023, when Defendants' counsel sent his email, and December 15, 2023, when Plaintiff sent a proposed settlement agreement. To the contrary, the action taken by Plaintiff was inconsistent with an agreement to "resolve this matter." Dkt. No. 91-1. Between those dates, Plaintiff's counsel appeared in Court and argued for conditional certification. Minute Entry of Nov. 14, 2023. Counsel also prepared and sent a revised collective notice. Dkt. No. 70. New members of the collective filed consent notices. Dkt. Nos. 60–61, 75. The actions by counsel on both sides was inconsistent with a view that a contract was in effect to settle the matter, either on an individual or a collective basis.

"The Second Circuit has clarified that the third *Winston* factor [evaluates] whether the parties have agreed 'on all *material* terms.'" *Est. of Andrea Brannon v. City of New York*, 2016 WL 1047078, at *2 (S.D.N.Y. Mar. 10, 2016) (Nathan, J.) (quoting *Ciaramella*, 131 F.3d at 325); *see also Scheinmann v. Dykstra*, 2017 WL 1422972, at *4 (S.D.N.Y. Apr. 21, 2017) (citing cases); *Grgurev*, 2016 WL 6652741, at *6 ("[C]ourts analyzing this factor focus on whether the parties reached agreement with respect to all *material* terms"). As to this factor, it is evident also that the parties did not reach an agreement on all material terms. Specifically, and most importantly, it is evident both from the testimony of the respective lawyers and from their conduct that the parties were not in agreement on the most important non-financial term—what they were settling. Although Mr. Lee claims in his declaration that the settlement offer he conveyed was for an "individual settlement," Dkt. No. 91 ¶ 5, Mr. Klein responds that the offer and his acceptance was to resolve the entire matter, Dkt. No. 98 ¶ 5. The latter assertion gains

support from the language of the October 24 email which refers to the resolution of "this matter," without qualification. Dkt. No. 91-1. It finds further support in the context of the negotiations, all of which involved resolution of the case as a whole and not just the claims of Vilella. And, finally, it is supported by the undisputed events of November 8, 2023, when Defendants' counsel suggested that Plaintiff's counsel inform the Court that the matter had been resolved so counsel would not have to appear for oral argument on the motion for conditional certification (a suggestion that would have made no sense if, in fact, the action was going to be continued albeit with a different plaintiff), and November 9, 2023, when Mr. Lee conceded it was his understanding that the settlement could not go forward if a new employee was added as plaintiff. *See* Dkt. No. 98 ¶¶ 15–17. The parties plainly did not reach a meeting of the minds.

The final factor is whether the agreement at issue is the type of contract that is usually committed to writing. To address this factor, it is insufficient for a party to state that settlement agreements are typically written; "[s]ince the *Winston* test is designed to determine if a settlement agreement is binding absent a formally executed agreement, it would be a strange test if the fourth factor always favored finding no agreement on the ground that settlement agreements usually are written." *Hostcentric*, 2005 WL 1377853, at *9. Typically, "this prong of the analysis focuses on 'whether the settlement terms are sufficiently complex or involve long time periods such that there should be a formal writing,' not on whether certain entities . . . prefer to put their settlement agreements in writing." *Est. of Andrea Brannon*, 2016 WL 1047078, at *3 (quoting *Case v. City of New York*, 2012 WL 5951296, at *7 (S.D.N.Y. Nov. 28, 2012)). But there is an additional factor that is relevant here because the case involves the settlement of a FLSA matter. FLSA cases can be settled in this Circuit in only one of two ways, through an accepted Rule 68 offer of judgment, *see Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395 (2d Cir.

2019), or through a written settlement agreement that is subject to a *Cheeks* hearing, *see Samake v. Thunder Lube, Inc.*, 24 F.4th 804 (2d Cir. 2022) (dismissal without prejudice requires hearing); *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) (settlement with prejudice requires hearing). In both instances, further and more formal written documentation is required. Particularly in the case of a case settled by agreement, rather than by accepted offer of judgment, the parties have to come to agreement on the terms of an agreement that will be on the public docket, and will have to agree that the employee is not bound to confidentiality. *See Lopez v. Nights of Cabira*, 96 F. Supp. 3d 170, 177 (S.D.N.Y. 2015). A written agreement and hearing protect against the risk that "without judicial oversight, . . . employers may be more inclined to offer, and employees, even when represented by counsel, may be more inclined to accept, private settlements that are cheaper to the employer than compliance with the Act." *Cheeks*, 796 F.3d at 205–06 (quoting *Socias v. Vornado Realty L.P.*, 297 F.R.D. 38, 41 (E.D.N.Y. 2014)). Admittedly, that proposition is generally intended to protect the employee. In this case, however, where the question is whether the settlement ordinarily is committed to writing, the formality that accompanies any settlement of a FLSA matter favors Defendants.

**CONCLUSION**

The motion to enforce the settlement is denied. The Clerk of Court is respectfully directed to close Dkt. No. 89.[3]

SO ORDERED.

Dated: March 19, 2024
New York, New York

LEWIS J. LIMAN
United States District Judge

[3] Defendants ask that the Court award them attorney's fees and impose sanctions on Plaintiff's counsel. Dkt. No. 100 at 7. However, Defendants have not made a Rule 11 motion for sanctions, nor have they complied with the requirements of Rule 11. *See* Fed. R. Civ. P. 11(c)(2). Accordingly, the request is denied.